UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

STEVEN SCHMITT,

                                       **NOTICE OF REMOVAL**

                  Plaintiff,

                                       Case No. 16 Civ. 5603

                      - against -

WILLIAM J. BRATTON, as Police Commissioner of the
City of New York, THE POLICE DEPARTMENT OF
THE CITY OF NEW YORK, and THE CITY OF NEW
YORK,

                                     Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**TO:    THE UNITED STATES DISTRICT COURT,
        SOUTHERN DISTRICT OF NEW YORK**

        William J. Bratton, as Police Commissioner of the City of New York ("Bratton"), The

Police Department of the City of New York ("NYPD"), and The City of New York (collectively,

"Defendants"), by and through their attorney, Zachary W. Carter, Corporation Counsel of the

City of New York, hereby file this Notice of Removal for the removal of a special proceeding

from the Supreme Court of the State of New York, New York County, to the United States

District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1441 and 1443.

In support thereof, Defendants respectfully state as follows:

            1.      On June 16, 2016, a special proceeding for a Judgment Pursuant to Article

78 of the New York Civil Practice Law and Rules was commenced in the Supreme Court of the

State of New York, County of New York, under Index No. 100977/2016, naming the Defendants

as parties to the proceeding.

2.      Defendants Bratton and NYPD were served with a Notice of Petition and Verified Petition (hereinafter "Petition") on June 16, 2016.  A copy of the Petition is annexed hereto as Exhibit "A."  Defendant the City of New York was served with the Petition on June 22, 2016.

3.      The District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), in that the Petition alleges violation of a federal statute.

4.      Specifically, the Petition charges, *inter alia*, that Defendants violated plaintiff's federal civil rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*

5.      The proceeding is therefore removable to the District Court without regard to the citizenship or residence of the parties, pursuant to 28 U.S.C. §§ 1441 and 1443.

6.      This Notice of Removal is timely because it is being filed within thirty days (30) days of receipt of the Petition placing the Defendants on notice of the plaintiff's federal claim of discrimination.  See 28 U.S.C. § 1446(b).

7.      Defendants are unaware of any previous application for the relief requested herein.

8.      Defendants will promptly serve a copy of this Notice of Removal on counsel for Petitioner, and will file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending, pursuant to 28 U.S.C. §1446(d).

9.      Defendants reserve all claims and defenses, including, without limitation, those set forth in Fed. R. Civ. P. 12(b).

**WHEREFORE**, Defendants respectfully request that the above-captioned proceeding be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated:      New York, New York
            July 14, 2016

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                               City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-146
                              New York, New York 10007
                              Tel: (212) 356-2457
                              mnacchio@law.nyc.gov


                        By:   */s/ Michael Nacchio* _____
                              Michael Nacchio
                              Assistant Corporation Counsel

TO:

**WORTH, LONGWORTH & LONDON LLP**
Attorneys for Petitioner
111 John Street, Suite 640
New York, New York 10038

JS 44C/SDNY
REV. 07/08/16

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS
STEVEN SCHMITT

DEFENDANTS
WILLIAM J. BRATTON, as Police Commissioner of the City of New York, THE POLICE DEPARTMENT OF THE CITY OF NEW YORK, and THE CITY OF NEW YORK

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
WORTH, LONGWORTH & LONDON, LLP, 111 John Street, New York, New York 10038, By: Howard Sterinbach, 212-964-8038

ATTORNEYS (IF KNOWN)
ZACHARY W. CARTER, Corporation Counsel of the City of New York, By: Michael Nacchio, NYC Law Department, 100 Church Street, New York, New York, 10007, 212-356-0839, mnacchio@law.nyc.gov

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff alleges that defendants violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [✓] Yes [ ]    Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?   No [x]   Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*                NATURE OF SUIT

TORTS

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/ | | [ ] 422 APPEAL | [ ] 375 FALSE CLAIMS |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | PHARMACEUTICAL PERSONAL | [ ] 625 DRUG RELATED | 28 USC 158 | [ ] 376 QUI TAM |
| [ ] 130 MILLER ACT | LIABILITY | INJURY/PRODUCT LIABILITY | SEIZURE OF PROPERTY | [ ] 423 WITHDRAWAL | [ ] 400 STATE |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | [ ] 365 PERSONAL INJURY | 21 USC 881 | 28 USC 157 | REAPPORTIONMENT |
| INSTRUMENT | SLANDER | PRODUCT LIABILITY | [ ] 690 OTHER | | [ ] 410 ANTITRUST |
| [ ] 150 RECOVERY OF | [ ] 330 FEDERAL | [ ] 368 ASBESTOS PERSONAL | | | [ ] 430 BANKS & BANKING |
| OVERPAYMENT & | EMPLOYERS' | INJURY PRODUCT | | | [ ] 450 COMMERCE |
| ENFORCEMENT | LIABILITY | LIABILITY | | PROPERTY RIGHTS | [ ] 460 DEPORTATION |
| OF JUDGMENT | [ ] 340 MARINE | | | [ ] 820 COPYRIGHTS | [ ] 470 RACKETEER INFLU- |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | PERSONAL PROPERTY | | [ ] 830 PATENT | ENCED & CORRUPT |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | | [ ] 840 TRADEMARK | ORGANIZATION ACT |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | | (RICO) |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | | | | [ ] 480 CONSUMER CREDIT |
| (EXCL VETERANS) | PRODUCT LIABILITY | | | SOCIAL SECURITY | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | [ ] 380 OTHER PERSONAL | | [ ] 861 HIA (1395ff) | |
| OVERPAYMENT | INJURY | PROPERTY DAMAGE | LABOR | [ ] 862 BLACK LUNG (923) | [ ] 850 SECURITIES/ |
| OF VETERAN'S | [ ] 362 PERSONAL INJURY - | [ ] 385 PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 863 DIWC/DIWW (405(g)) | COMMODITIES/ |
| BENEFITS | MED MALPRACTICE | PRODUCT LIABILITY | STANDARDS ACT | [ ] 864 SSID TITLE XVI | EXCHANGE |
| [ ] 160 STOCKHOLDERS | | | [ ] 720 LABOR/MGMT | [ ] 865 RSI (405(g)) | |
| SUITS | | | RELATIONS | | |
| [ ] 190 OTHER | | PRISONER PETITIONS | [ ] 740 RAILWAY LABOR ACT | | [ ] 890 OTHER STATUTORY |
| CONTRACT | | [ ] 463 ALIEN DETAINEE | [ ] 751 FAMILY MEDICAL | FEDERAL TAX SUITS | ACTIONS |
| [ ] 195 CONTRACT | | [ ] 510 MOTIONS TO | LEAVE ACT (FMLA) | [ ] 870 TAXES (U.S. Plaintiff or | [ ] 891 AGRICULTURAL ACTS |
| PRODUCT | ACTIONS UNDER STATUTES | VACATE SENTENCE | | Defendant) | |
| LIABILITY | | 28 USC 2255 | [ ] 790 OTHER LABOR | [ ] 871 IRS-THIRD PARTY | [ ] 893 ENVIRONMENTAL |
| [ ] 196 FRANCHISE | CIVIL RIGHTS | [ ] 530 HABEAS CORPUS | LITIGATION | 26 USC 7609 | MATTERS |
| | | [ ] 535 DEATH PENALTY | [ ] 791 EMPL RET INC | | [ ] 895 FREEDOM OF |
| | [ ] 440 OTHER CIVIL RIGHTS | [ ] 540 MANDAMUS & OTHER | SECURITY ACT (ERISA) | | INFORMATION ACT |
| REAL PROPERTY | (Non-Prisoner) | | | | [ ] 896 ARBITRATION |
| | [ ] 441 VOTING | | | IMMIGRATION | [ ] 899 ADMINISTRATIVE |
| [ ] 210 LAND | [ ] 442 EMPLOYMENT | PRISONER CIVIL RIGHTS | | [ ] 462 NATURALIZATION | PROCEDURE ACT/REVIEW OR |
| CONDEMNATION | [ ] 443 HOUSING/ | | | APPLICATION | APPEAL OF AGENCY DECISION |
| [ ] 220 FORECLOSURE | ACCOMMODATIONS | [ ] 550 CIVIL RIGHTS | | [ ] 465 OTHER IMMIGRATION | [ ] 950 CONSTITUTIONALITY OF |
| [ ] 230 RENT LEASE & | [x] 445 AMERICANS WITH | [ ] 555 PRISON CONDITION | | ACTIONS | STATE STATUTES |
| EJECTMENT | DISABILITIES - | [ ] 560 CIVIL DETAINEE | | | |
| [ ] 240 TORTS TO LAND | EMPLOYMENT | CONDITIONS OF CONFINEMENT | | | |
| [ ] 245 TORT PRODUCT | [ ] 446 AMERICANS WITH | | | | |
| LIABILITY | DISABILITIES -OTHER | | | | |
| [ ] 290 ALL OTHER | [ ] 448 EDUCATION | | | | |
| REAL PROPERTY | | | | | |

Check if demanded in complaint:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

DEMAND $ _____ OTHER _____    JUDGE _____ DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [✓] NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN x IN ONE BOX ONLY)* **ORIGIN**

[ ] 1 Original Proceeding  [x] 2 Removed from State Court  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation (Transferred)  [ ] 7 Appeal to District Judge from Magistrate Judge

[x] a. all parties represented

[ ] b. At least one party is pro se.

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)* **BASIS OF JURISDICTION**       *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [x] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [ ] 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.
DO NOT check either box if this is a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [x] MANHATTAN

DATE                SIGNATURE OF ATTORNEY OF RECORD                ADMITTED TO PRACTICE IN THIS DISTRICT
                                                                   [ ] NO
RECEIPT #        *Michael Nardio*                                  [x] YES (DATE ADMITTED Mo. 07    Yr. 2015   )
                                                                   Attorney Bar Code # MN0510

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

## CERTIFICATE OF SERVICE

I, MICHAEL NACCHIO, declare, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury that on July 14, 2014, I served a true and correct copies of the attached **Notice of Removal** and **Civil Cover Sheet** by depositing copies of the same, enclosed in a first class postpaid properly addressed wrapper, in a post office/official depository under the exclusive care and custody of the United States Postal Service, within the State of New York directed to all parties at the addresses listed below

**WORTH, LONGWORTH & LONDON LLP**
111 John Street, Suite 640
New York, New York 10038

Dated:          New York, New York
                July 14, 2016

                                      /s/ *Michael Nacchio*
                                      Michael Nacchio
                                      Assistant Corporation Counsel

# Exhibit "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

2016 - 021816

----------------------------------------------------------------X

In the Matter of the Application of
Police Officer STEVEN SCHMITT,

                                        Petitioner,

For a Judgment Pursuant to Article 78 of the Civil          NOTICE OF PETITION
Practice Law and Rules,

                                                            Index No.: 100977-2016
            - against -

WILLIAM J. BRATTON, as Police Commissioner of the City
of New York, THE POLICE DEPARTMENT OF THE CITY
OF NEW YORK, and THE CITY OF NEW YORK,

                                        Respondents.

----------------------------------------------------------------X

**PLEASE TAKE NOTICE**, that upon the annexed petition of STEVEN SCHMITT, duly

verified on June 16, 2016, the undersigned will move before the Submissions Part, Room 130, of

this Court in the New York County Courthouse, located at 60 Centre Street, New York, New York

on July 18, 2016, at 9:30 a.m., or as soon thereafter as counsel can be heard, for a judgment:

> (1) annulling the determination of Respondent Police Commissioner
> that summarily terminated petitioner from his position as a police
> officer with the NYPD and directing that he be restored as a police
> officer with the NYPD, with full back pay, benefits and seniority
> restored as of March 21, 2016; or

> (2) at a minimum, annulling the determination of Respondent Police
> Commissioner that summarily terminated petitioner from his position
> as a police officer with the NYPD and directing that he be restored as
> a police officer with the NYPD for the purpose of allowing him to
> submit his application for Ordinary Disability Retirement benefits
> and, if that application is denied, allowing him to retire with the
> vested interest retirement benefits that he accumulated in his years of
> service with the NYPD since 2004; and

> (3) for such other and further relief as the Court may deem just and
> proper.

PLEASE TAKE FURTHER NOTICE, pursuant to Rule 2214(b) of the CPLR, a verified answer and supporting affidavits, if any, must be served at least seven (7) days before the return date of this motion.

PLEASE TAKE FURTHER NOTICE, pursuant to Section 7804 of the CPLR, you are directed to file with the Clerk of the Court your answer and answering affidavits, etc., together with a certified transcript of a chronologically numbered record of the proceeding together with the entire official file containing exhibits and the records of the petitioner held by the respondent Police Commissioner.

Venue is based on CPLR § 506(b); respondents' principle offices are located in New York County, and the actions and determinations sought to be altered and/or vacated by this proceeding took place in that county.

Dated: New York, New York
June 16, 2016

Respectfully submitted,

WORTH, LONGWORTH & LONDON, LLP
Attorneys for Petitioner Steven Schmitt

By:     *Howard B. Sterinbach*
Howard B. Sterinbach
111 John Street
Suite 640
New York, New York 10038
(212) 964-8038

2

TO:    Zachary Carter
Corporation Counsel
City of New York
100 Church Street
New York, New York 10007

Hon. William J. Bratton
Police Commissioner of the City of New York
1 Police Plaza
New York, New York 10038

New York City Police Department
1 Police Plaza
New York, New York 10038

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Application of
Police Officer STEVEN SCHMITT,

Petitioner,

For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules,

- against -

WILLIAM J. BRATTON, as Police Commissioner of the City
of New York, THE POLICE DEPARTMENT OF THE CITY
OF NEW YORK, and THE CITY OF NEW YORK,

Respondents.
------------------------------------------------------------------------X

VERIFIED PETITION

Index No.: 100977-2016

Petitioner STEVEN SCHMITT ("petitioner"), by his attorneys, WORTH, LONGWORTH

& LONDON, LLP, Howard B. Sterinbach, of counsel, respectfully shows to the Court and alleges

as follows:

1.       Petitioner is a citizen of the United States of America and the State of New York, and

was a citizen at all times pertinent to this proceeding.

2.       Following his successful completion of an open, competitive civil service

examination, petitioner was duly appointed a Police Officer in the Police Department of the City of

New York and took the Oath of Office prescribed by Article XIII § 1 of the New York State

Constitution on July 1, 2004, and was a New York City Police Officer in the competitive class of

civil service of the City of New York at all times pertinent to this proceeding.

3.      Respondent, WILLIAM J. BRATTON, is the Police Commissioner of the City of New York, and exercises the powers, responsibilities, and duties of that office.

4.      Respondent, THE CITY OF NEW YORK, is a duly established City of over one million inhabitants, as the term is defined in the Laws of the State of New York, and is a duly organized municipal corporation in the State of New York.  Respondent THE CITY OF NEW YORK was, at all relevant times, petitioner's public employer.

5.      Respondent, THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), is the duly authorized agency responsible for the maintenance of law and order within the geographic confines of Respondent THE CITY OF NEW YORK.  It functions as the direct manager and disciplinary authority for petitioner and for all other New York City Police Officers.

### The Facts

Petitioner is placed on one year dismissal probation.

6.      After graduating from the Police Academy, petitioner was assigned to the 108th Precinct in Long Island City, Queens.  He worked there from approximately January 2005 to approximately September 2005.

7.      Petitioner was assigned to the Queens North Task Force from approximately September 2005 to approximately May 2006.

8.      In or about May 2006, petitioner was assigned to the 109th Precinct in Flushing, Queens. At the 109th Precinct, petitioner had interpersonal problems with supervisors. Yet despite those interpersonal problems, petitioner remained assigned to work at the 109th Precinct stationhouse until approximately August 2012.

2

9.      In or about January 2013, petitioner was served with NYPD disciplinary charges and specifications under disciplinary case number 2012/7794. The seven (7) disciplinary charges did not concern alleged misconduct related to incidents with the public, such as allegations of excessive force; but instead, the allegations against petitioner related to alleged misconduct involving purely administrative matters – the first one allegedly taking place in May of 2012 and the others in July of 2012.  In sum and substance, the following were the charges in disciplinary case number 2012/7794:

> Specification # 1 alleged that petitioner read a newspaper during roll call;
>
> specification # 2 alleged that petitioner was discourteous to a supervisor when instructed about the cleanliness of his uniform;
>
> specification # 3 alleged that petitioner failed to maintain a neat and clean appearance;
>
> specification # 4 alleged that petitioner was discourteous to a supervisor by threatening to leave the command before completing an arrest processing of an individual;
>
> specification # 5 alleged that petitioner referred to a supervisor as a "f-cking retard";
>
> specification # 6 alleged that petitioner failed to prepare a Property Clerk's Invoice; and
>
> specification # 7 alleged that petitioner failed to report to the Desk Officer when he left the stationhouse.

(A copy of the charges and specifications in disciplinary case number 2012/7794 with tax registry number redacted is annexed hereto as Exhibit A)[1]

---

[1] Petitioner's tax registry number is redacted on all the attached exhibits pursuant to amended section 202.5(e)(1)(I) of the Uniform Civil Rules of the Supreme and County Courts, effective January 1, 2015, which directs parties to omit confidential personal information.

3



10.     Petitioner believed that the charges and specifications were essentially "drummed up" because the supervisors at the 109th Precinct had a personal dislike towards him.

11.     An administrative trial was conducted in December 2 and 13, 2013 before NYPD Assistant Deputy Commissioner of Trials Amy J. Porter ("ADCT Porter").   On or about May 13, 2014, ADCT Porter found petitioner guilty of specifications 1, 2, 4, 5, and 7 and not guilty of specifications 3 and 6. (A copy of ADCT Porter's Report and Recommendation is annexed hereto as Exhibit B; *see* Exhibit B at pp. 3, 16-24)

12.     In coming to a penalty recommendation, ADCT Porter noted that each of the individual specifications were "not significant."   In relevant part, ADCT Porter stated:

> [Petitioner] argued that his superiors were unfairly targeting him because they did not like him.   While there was no evidence of a conspiracy, [petitioner's] attitude and behavior could not have endeared him to his superiors. **Certainly the misconduct described in each of the individual specifications standing alone was not significant.**  However, when taken together, they reflect a continual pattern by [petitioner] for disrespect toward his supervisors and a general lack of supervision.

(Exhibit B at p. 25) (emphasis added)

13.     ADCT Porter recommended to the Police Commissioner that petitioner forfeit thirty (30) vacation days for his guilt of specifications 1, 2, 4, 5, and 7. (Exhibit B at p. 25)

14.     On October 30, 2014, the Police Commissioner approved ADCT Porter's findings of fact.   However, the Police Commissioner did not approve the penalty.   Specifically, in addition to having petitioner forfeit thirty (30) vacation days, the Police Commissioner placed petitioner on one (1) year dismissal probation.   During that one year probation, petitioner could be terminated from the NYPD without further hearings; however, any future termination would still have to be

4

made within the bounds of the law. (Copies the Police Commissioner's October 30, 2014 memorandum and the Disposition of Charges are annexed hereto as Exhibit C.)

15.     The determination and penalty imposed under disciplinary case 2012/7794 is not the subject of this Article 78 proceeding.


An NYPD Commanding Officer recognizes possible psychological issues with
petitioner; but NYPD Psychological Services keeps petitioner on full duty status.

16.     As noted, the incidents that brought on the charges and specifications for which petitioner was later placed on dismissal probation took place in May and July of 2012, during petitioner's time at the 109th Precinct.

17.     After those incidents, from approximately August 2012 to approximately February 2014, although still officially assigned to the 109th Precinct, petitioner was re-assigned to the Investigation Review Section of the NYPD Chief of Department, located in Manhattan.

18.     In or around January 2014, the Commanding Officer of the Investigations Review Board recognized psychological issues with petitioner and, in so doing, he questioned petitioner's fitness for full duty NYPD status.  Petitioner was then ordered to go to Psychological Services at the NYPD's Medical Division in Lefrak City for a fitness evaluation.

19.     Notwithstanding the Commanding Officer's concerns, the NYPD's Psychological Services determined that petitioner was psychologically fit to remain on full duty NYPD status.

<u>In late March of 2014, the NYPD places petitioner on restricted duty for psychological reasons.</u>

20.     Shortly after the NYPD's Psychological Services evaluated petitioner, in or about late February 2014, the NYPD transferred petitioner from the Investigation Review Section back to the 109th Precinct.

21.     Soon afterwards, in or about March 2014, petitioner was feeling depressed and overwhelmed, possibly due to his assignment back at the 109th Precinct, which was the Precinct at which he had the prior problems that brought about the charges and specifications and ultimately his placement on dismissal probation.

22.     On or about March 26, 2014, petitioner voluntarily went back to the NYPD's Psychological Services in Lefrak City for another psychological evaluation.

23.     After this second NYPD psychological evaluation, the NYPD took away petitioner's gun and shield and placed him on restricted duty.

24.     On March 28, 2014, just days after the NYPD placed him on restricted duty, petitioner went to Comprehensive Consultation Psychological Services, P.C., where he met with Yi-Chui Wu, M.S. and Sunam Hafeez, Psy.D., for a neuropsychological evaluation.

25.     At the very start of April 2014, just a few days after the NYPD placed petitioner on restricted duty, petitioner was reassigned to Queens Central Booking at the Queens County Courthouse in Kew Gardens. Petitioner's duties at Queens Central Booking involved administrative assignments, such as paperwork.

26.     Petitioner preferred his assignment at Queens Central Booking to his assignment at the 109th Precinct.

27.     An NYPD evaluation dated May 6, 2014 showed that petitioner worked well at the Queens Court Section, with his overall performance meeting the standards expected of him. (A copy of petitioner's NYPD evaluation dated May 6, 2014 is annexed hereto as Exhibit D.)

In late March 2015, the NYPD puts petitioner back on full duty.

28.     While on restricted duty during his assignment at the Queens Court Section, the NYPD had petitioner see a psychologist approximately once a month at NYPD Psychological Services in Lefrak City.

29.     During his visits to the NYPD psychologist, petitioner was told that he did not need to see an independent psychologist.

30.     In or about May 2014, petitioner received a written report from the independent psychological evaluation that he had taken on March 28, 2014 at Comprehensive Consultation Psychological Services, P.C. (*See* ¶ 24, *supra*; a copy of that written report is annexed hereto as Exhibit E.)

31.     That report detailed instances of petitioner having difficulty in personal interactions. Among other things, it noted the following: petitioner sought the evaluation due to "reported interpersonal difficulties at work" (Exhibit E at p. 1); petitioner was ordered by his Commanding Officer to get evaluated by an NYPD psychologist, despite petitioner believing that nothing specific happened to warrant it (*id.*); interviews had to be conducted with other people besides petitioner because of petitioner's difficulty providing insight into his problems (*id.*, at p. 2); petitioner had been in therapy as a teenager for "non-compliance" and arguing with his parents (*id.*); petitioner alluded that he was not good with authority and did not respond well when he believes that he is being

attacked (*id.*); petitioner's eye contact was "poor" during his evaluation, he "failed to show insight or provide concrete examples of problems, and he did not volunteer information and tried to omit information (*id.*); results of the "Goldberg Bipolar Screening Questionnaire" "suggest[ed] that [petitioner] is most likely to experience major depression or a disorder in the bipolar spectrum" (*id.*, at p. 3); interviews with petitioner's family members revealed that petitioner can present as "abrasive and defiant towards authority figures," that he was "oblivious to the consequences of his actions," that he can be rigid in his ways and in his beliefs, that it is difficult for him to engage in perspective because he believes that what he thinks is correct, that "[u]nderstanding of social norms and etiquette" was problematic for him, that he has difficulty listening to the advice of others, and that he is very opinionated and does not change his mind, and he thinks that people who do not share his views are against him. (*Id.*, at p. 5)

32.     That report also noted that NYPD Lieutenant Gluf, who had supervised petitioner in the past, stated that petitioner reminded him of his autistic daughter. Lieutenant Gluf reported that petitioner was "combative and self-destructive" and had hygiene issues. It was Lieutenant Gluf who "requested the evaluation to give [petitioner] a chance at a job rather than getting fired." Lieutenant Gluf felt badly for petitioner because petitioner "has a family" and the lieutenant "sympathize[d]" because he was the parent of an autistic child. (Exhibit E at p. 6)

33.     That report concluded that psychological testing of petitioner showed that the probability of him having Asperger's Disorder[2] was "at the borderline range." The results of a

---

[2] Upon information and belief, Asperger's Syndrome is a developmental disorder that makes it very hard for the person to interact with others. Asperger's Syndrome belongs to the group of "autism spectrum disorders." (From WebMD, "Asperger's Syndrome - Topic Overview")

bipolar screening also "suggest[ed]" that petitioner was "most likely to experience major depression or a disorder in the bipolar spectrum." (*See* Exhibit E at p. 6)

34.     Upon receipt of that report in May 2014, petitioner provided a copy of it to the NYPD's Psychological Services.

35.     In late March 2015, with petitioner having been on restricted duty for a few days short of one year, petitioner was called into the offices of the NYPD's Employee Management Division ("EMD"). There he was told that he would be going back to a full duty assignment, meaning that he would be re-assigned from the Queens Court Section. Petitioner was initially told by EMD that he would not be re-assigned back to the 109th Precinct in light of his prior problems there, *i.e.*, it was there where he had the charges and specifications for which he had been placed on one year dismissal probation.

36.     Notwithstanding what he was told by EMD, on or about March 26, 2015, petitioner was placed back on full duty status with the NYPD and was re-assigned to the 109th Precinct.

37.     With his placement back on full duty status, the NYPD gave petitioner back his NYPD-issued firearm.


Petitioner is summarily terminated from the NYPD.

38.     As discussed (*supra,* at ¶ 14), petitioner was placed on one year dismissal probation effective October 30, 2014.

39.     Also as discussed, petitioner was on restricted duty from on or about March 26, 2014 to on or about March 26, 2015.

40.     Petitioner's one year probationary period was extended for all of his time not on full duty status. The City's Personnel Rules provide for extending an employee's probationary term by a variety of days, for example, when the employee is on limited duty. *See Garcia v. Bratton*, 90 N.Y.2d 991, 992-94 (1997), citing Rule 5.2.8(b) of the Rules and Regulations of the City Personnel Director.

41.     Accordingly, given that petitioner was on restricted duty when he was placed on one year dismissal probation, the time that petitioner spent on restricted duty did not count towards the completion of his "one year" probationary period.

42.     Rather, it was only on or about March 26, 2015, when petitioner was placed back to full duty, that the days started to count towards the completion of his one year dismissal probation. Consequently, petitioner's one year probationary period would run from on or about March 26, 2015 to on or about March 26, 2016.

43.     During his time on full duty at the 109th Precinct, petitioner was given monotonous duties for hours at a time, such as standing outside of the back door of the station house.

44.     Starting around early March of 2016, petitioner thought about submitting an application for Ordinary Disability Retirement from the NYPD, given his diagnosis of "borderline" Asperger's Disorder.

45.     By mid-March 2016, petitioner decided that he would submit an application for Ordinary Disability Retirement from the NYPD. After working on Saturday, March 19, 2016, petitioner had regular days off until Wednesday, March 23, 2016. He planned on submitting an application for Ordinary Disability Retirement on March 23, 2016.

46.     Petitioner never got the opportunity to submit his application for Ordinary Disability Retirement.

47.     On Tuesday, March 22, 2016, when petitioner was home on his day off, a letter dated March 21, 2016, was delivered to his home, stating that he had been summarily terminated from the NYPD effective March 21, 2016.  Not only did petitioner receive that letter one day before he was going to submit his application for Ordinary Disability Retirement, but it was just a few days before his one year probation would have come to an end.  The NYPD did not state any reason for why it summarily terminated petitioner. (A copy of the termination letter is annexed hereto as Exhibit F.)

**The NYPD's termination of
petitioner must be annulled
because it was in violation of the law.**

48.     Although the Police Commissioner has discretion to terminate a probationary officer, that discretion has very real limits.   A probationary officer may not be discharged for a "constitutionally impermissible purpose or in violation of statutory or decisional law." *York v. McGuire*, 63 N.Y.2d 760, 761 (1984).  Although the Police Commissioner has the general authority to dismiss a probationary employee "for any reason or no reason at all," the dismissal cannot be done in bad faith. *See Rogers v. City of New York Department of Correction*, 193 A.D.2d 506 (1st Dept.), *lv. denied*, 82 N.Y.2d 820 (1993).  When an issue that the termination was in violation of decisional or statutory law is raised, an inquiry must be made as to whether the termination was made in bad faith. *See Soto v. Koehler*, 171 A.D.2d 567, 568 (1st Dept. 1991).  Here, the NYPD's summary termination of petitioner violated both decisional and statutory law, warranting annulment of his termination.

11

The NYPD summarily terminated petitioner in bad faith to frustrate
him from applying for an ordinary disability retirement pension.

49.     The Police Department's power to summarily terminate a probationary officer is
"circumscribed by the limitation that the termination of a probationary employee may not be effected
with a view toward frustrating an application for disability retirement or if it is otherwise made in
bad faith." *Bellman v. McGuire*, 140 A.D.2d 262, 266 (1st Dept. 1988), *citing Edwards v. Codd*, 59
A.D.2d 148 (1st Dept. 1977).  Under the applicable standards, the NYPD's action of terminating
petitioner must be annulled, with petitioner reinstatement so as to be approved for the disability
pension for which he was about to apply right before his dismissal.

50.     In mid-March 2016, petitioner decided that he would submit an application for
Ordinary Disability Retirement the following week; specifically, he was going to submit the
application on March 23, 2016, after his regular days off. (*See* ¶ 45, *supra*)  The NYPD, however,
did not allow that to happen when it summarily terminated petitioner on March 21, 2016, without
providing petitioner any reason for that summary termination. (*See* Exhibit F)

51.     As noted, petitioner's "one year" dismissal probation was going to be completed on
or about March 26, 2016. (*See* ¶ 42, *supra*)  Therefore, when the NYPD summarily terminated
petitioner on March 21, 2016, it did so with just a few days remaining on his probationary period.
Had the NYPD waited a few more days, the NYPD would not have been allowed to summarily
terminate petitioner from the job and petitioner would have had the opportunity to submit his
Ordinary Disability Retirement application.

52.     The timing of the NYPD's actions demonstrates that the NYPD acted with the intent to frustrate petitioner from retiring with Ordinary Disability Retirement benefits.  Terminating a probationary employee with the purpose of frustrating him or her from receiving such benefits constitutes bad faith and cannot be countenanced, thereby warranting annulment of his termination and his reinstatement to the NYPD.

The NYPD's summary termination of petitioner
violated the American with Disabilities Act.

53.     A cause of action for disability discrimination and wrongful discharge under the American Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12101 *et seq.*) requires a *prima facie* showing that: (1) the defendant employer is subject to the ADA; (2) the plaintiff is disabled under the meaning of the ADA or was perceived to be by the employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job either with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his or her disability. *See Glaser v. Gap, Inc.*, 994 F.Supp.2d 569, 573 (S.D.N.Y. 2014).

54.     For the first element for a cause of action for wrongful discharge under the ADA, there is no question that the NYPD was petitioner's employer subject to the ADA.

55.     For the second element for a cause of action for wrongful discharge under the ADA, petitioner was disabled under the meaning of the ADA and was perceived to have been disabled by the NYPD.  Indeed, plaintiff's independent neuropsychological evaluation detailed petitioner's borderline Asperger's Syndrome, which is a disability under that statute, or at a minimum raises the factual question of his disability. (*See e.g., Glaser v. Gap, Inc., supra*, 994 F.Supp.2d at 573-76)

13

56.     The NYPD perceived that petitioner had a disability given that petitioner provided the independent neuropsychological evaluation to the NYPD (*see* ¶ 34, *supra*); and it was NYPD Lieutenant Gluf who requested that petitioner get evaluated. (Exhibit E at p. 6)  Likewise, from late March 2014 to late March 2015, when petitioner was on restricted duty, the NYPD had petitioner see a psychologist on a monthly basis at the NYPD's Psychological Services at Lefrak City. (*See* ¶¶ 28-29, 34, *supra*)

57.     Petitioner does not have records from his meetings with the NYPD psychologist; but the NYPD's psychological records must reflect the NYPD's perception of petitioner's disability. Therefore, on April 14, 2016, petitioner submitted a Freedom of Information Law ("FOIL") request, seeking the NYPD's entire personnel file related to petitioner, including, but not limited to: (1) any and all records related to the reason for which the NYPD terminated his employment; (2) any and all records of Command Disciplines issued to him; (3) any and all records related to him being placed on restricted duty and having his firearm temporarily removed from him by the NYPD for non-disciplinary reasons in or about late March 2014; and (4) any and all records related to him being placed back on full duty and having his firearm restored to him by the NYPD in or about late March 2015. (A copy of petitioner's FOIL request is annexed hereto as Exhibit G.)

58.     The NYPD denied petitioner's FOIL request on April 26, 2016. (A copy of that denial is annexed hereto as Exhibit H.)  Petitioner submitted an appeal of the denial of his FOIL request in a letter dated May 3, 2016. (A copy of petitioner's FOIL appeal without exhibits is annexed hereto as Exhibit I.)  Petitioner's appeal of the NYPD's denial of his FOIL request is pending.

59.     For the third element for a cause of action for wrongful discharge under the ADA, petitioner can show that he was otherwise qualified to perform the essential functions of the job

either with or without reasonable accommodation.  Indeed, although the NYPD did not state in its termination letter the basis for its summary termination of petitioner (*see* Exhibit F), petitioner's good evaluation for the time period when he was working at the Queens Court Section shows that he could perform the essential functions of the job. (*See* Exhibit D)

60.   For the fourth element for a cause of action for wrongful discharge under the ADA, petitioner maintains that he suffered an adverse employment action because of his disability, *i.e.*, he was summarily terminated from the job.

61.   By its summary termination of petitioner, the NYPD subjected petitioner to disability discrimination in violation of Federal law under 42 U.S.C. § 12101 *et seq.*, thereby warranting annulment of his termination and his reinstatement to the NYPD.

The NYPD's summary termination of petitioner violated the New York State
Human Rights Law and the Administrative Code of the City of New York.

62.   A cause of action for disability discrimination and wrongful discharge under the New York State Human Rights Law (Executive Law § 296[1][a]) requires a *prima facie* showing from the plaintiff that: (1) he or she suffers from a disability; and (2) the disability caused the behavior for which he or she was terminated. *See Glaser v. Gap, Inc.*, *supra*, 994 F.Supp.2d at 573.

63.   Here, those two elements are met.  Petitioner's independent neuropsychological evaluation detailed petitioner's borderline Asperger's Syndrome (*see* Exhibit E at p. 6), a disability under that statute (or at minimum there is the factual question of his disability) (*see e.g., Glaser v. Gap, Inc.*, *supra*, 994 F.Supp.2d at 573-76); and it was that disability, impairing petitioner's ability to interact with others, which led to petitioner's prior problems at work. (*See* Exhibit E)  Again,

15

however, petitioner maintains that he was performing his job satisfactorily at the time he was terminated, but that he was summarily terminated in bad faith so as to frustrate him from applying for Ordinary Disability Retirement. (*See* ¶¶ 49-52, *supra*)

64.     Accordingly, by its summary termination of petitioner, the NYPD subjected petitioner to disability discrimination in violation of the New York State Human Rights Law under Executive Law § 296, thereby warranting annulment of his termination and his reinstatement to the NYPD.

65.     A cause of action for employee discrimination on the basis of disability under the Administrative Code of the City of New York § 8-107 is the same as that under the New York State Human Rights Law (Executive Law § 296[1][a]). *See McKenzie v. Meridian Capital Group, LLC,* 35 A.D.3d 676, 677 (2nd Dept. 2006).

66.     Therefore, by its summary termination of petitioner, the NYPD also subjected petitioner to disability discrimination in violation of the Administrative Code of the City of New York § 8-107 for the same reasons for which it violated the New York State Human Rights Law, thereby warranting annulment of his termination and his reinstatement to the NYPD.


67.     For all the reasons set forth above, petitioner was summarily terminated from the NYPD on March 21, 2016 in violation of decisional law and Federal and New York State statutory law.  Accordingly, pursuant to CPLR § 7803(3), the determination terminating petitioner from the NYPD must be annulled by this Court; and an Order should be issued having petitioner restored to his position as a Police Officer with the NYPD with back pay, full benefits, and seniority restored.

68.   At a minimum, the determination terminating petitioner from the NYPD must be annulled by this Court; and an Order should be issued having petitioner restored to his position as a Police Officer with the NYPD for the purpose of allowing him to submit his application for Ordinary Disability Retirement benefits and, if that application is denied, allowing him to retire with the vested interest retirement benefits that he accumulated in his years of service with the NYPD since 2004.

**If the Court does not find bad faith at this juncture, a trial under
CPLR § 7804(h) is warranted because a substantial issue is raised that
the NYPD terminated petitioner arbitrarily, capriciously, and in bad faith.**

69.   If the Court does not find bad faith at this juncture, then a hearing needs to be held under CPLR § 7804(h) to determine whether the NYPD acted in bad faith or in an arbitrary and capricious manner by summarily terminating petitioner's employment as a probationary officer. *See Ramos v. Department of Mental Hygiene*, 34 A.D.2d 925 (1st Dept. 1970) (trial under CPLR § 7804(h) required based on claim that probationary employee's dismissal was arbitrary as it related to personality conflict with supervisor and not failure to perform duties satisfactorily); *see also Bombard v. State of New York*, 113 A.D.3d 954, 955-56 (3rd Dept. 2014) (hearing necessary to determine whether probationary employment was terminated for improper reason).

70.   No previous application has been made for the relief or judgment presently sought.

WHEREFORE, petitioner prays for judgment pursuant to Article 78 of the Civil Practice Law and Rules:

(1) annulling the determination of Respondent Police Commissioner that summarily terminated petitioner from his position as a police officer with the NYPD and directing that he be restored as a police officer with the NYPD, with full back pay, benefits and seniority restored as of March 21, 2016; or

(2) at a minimum, annulling the determination of Respondent Police Commissioner that summarily terminated petitioner from his position as a police officer with the NYPD and directing that he be restored as a police officer with the NYPD for the purpose of allowing him to submit his application for Ordinary Disability Retirement benefits and, if that application is denied, allowing him to retire with the vested interest retirement benefits that he accumulated in his years of service with the NYPD since 2004; and

(3) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     June 16, 2016

Respectfully submitted,

WORTH, LONGWORTH & LONDON, LLP
Attorneys for Petitioner Steven Schmitt

By: *Howard B. Sterinbach*

Howard B. Sterinbach
111 John Street, Suite 640
New York, New York 10038
(212) 964-8038

18

<u>VERIFICATION</u>

Steven Schmitt, being duly sworn, says:  I am the Petitioner in this action.  I have read the annexed Notice of Petition and Verified Petition, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____

Steven Schmitt

Sworn to before me this
16th day of June, 2016

Notary Public

Case No. 16 Civ. 5603

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN SCHMITT,

Plaintiff,

- against -

WILLIAM J. BRATTON, as Police Commissioner of the City
of New York, THE POLICE DEPARTMENT OF THE CITY
OF NEW YORK, and THE CITY OF NEW YORK,

Defendants.

**NOTICE OF REMOVAL**

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-146
New York, New York 10007

Of Counsel:  Michael Nacchio
Tel:  (212) 356-0839
Matter No. 2016-012816

Due and timely service is hereby admitted.

New York, N.Y. ..............................................................., 20___

.......................................................................... Esq.

Attorney for..............................................................................